Webb et al. vs. Keller et al.

Poché, J. I concur in the decree.

## No. 9785.

### BEULAH WEBB, WIFE, ET AL. VS. AMELIA KELLER ET AL.

1. The fact that only *one* of the parties defendant, cited in an action to annul a probate sale of real estate—portions of which are in possession of various other defendants cited—has prosecuted his appeal, from an order obtained in open court, by him, at the same term at which final judgment was rendered against him, cannot be treated as invalidating his appeal. Those who are not appellants are appellees; and such individual appellant has the right to prosecute *his* appeal, which is regularly taken, notwithstanding his co-defendants—against whom judgments have been *previously* rendered—have not been formally cited, and have acquiesced therein.

2. A motion to dismiss an appeal on account of informality in the bond, or order of appeal, or even the *want* of the latter, must be made at the term at which the appeal is made returnable, and within three judicial days after the record is filed.

One filed within the time specified, and not disposed at that term, cannot be supplemented, at a subsequent term, by another motion to dismiss upon other grounds not enumerated in the one first filed.

### ON THE MERITS.

1. If an universal legatee shall marry a second time, having children of a preceding marriage, he or she cannot, in any manner dispose of the property given or bequeathed to him or her by the deceased spouse.

| 39 | 55 |
| 44 | 49 |
| 44 | 301 |
| 44 | 422 |
| 39 | 55 |
| 45 | 29 |
| 39 | 55 |
| 48 | 600 |
| 48 | 800 |
| 49 | 181 |
| 39 | 55 |
| 51 | 1041 |
| 51 | 1551 |
| 39 | 55 |
| 104 | 649 |
| 104 | 651 |
| 39 | 55 |
| 106 | 122 |
| 39 | 55 |
| 108 | 137 |
| 39 | 55 |
| e110 | 834 |
| 110 | 1036 |
| 39 | 55 |
| 113 | 638 |
| 113 | 773 |
| 39 | 55 |
| 119 | 227 |
| 39 | 55 |
| 121 | 1049 |

The property becomes, by the second marriage, the property of the children of the preceding marriage and such legatee only retains its usufruct.

2. The rulings of this Court in Bird vs. Succession of Jones, 5 Ann. 644; Wells vs. Wells, 30 Ann 936; Succession of Frazier, 35 Ann. 382; Succession of Townsend, 37 Ann. 408, and Succession of Townsend vs. Sykes, 38 Ann. 859, are unreservedly affirmed.

3. Mere illegality in the appointment of an administrator, executrix or undertutor will not vitiate the acts done under it. The *acts* of an officer, in such case, are valid, although he should have been illegally appointed.

4. It was discretionary with the probate judge, on the application of the executrix to cause the property ordered to be sold to be re-examined and re-appraised; as it may well be that a former appraisement was excesive, or the value of it had diminished since it was made.

5. The purchaser at a sale, made at public auction, under an order made by a judge having jurisdiction of the succession, is not bound to look beyond such decree, in order to ascertain its necessity.

He is bound only to ascertain that the judge had jurisdiction; and finding that he had, the *truth* of the record, in other respects, may be assumed.

6. Informalities in the appointment of an undertutor, in the composition of a family meeting recommending a sale of succession property to pay the ancestor's debts, and in which minors have a residuary interest; in the method of proving the existence of debts of deceased to the judge granting the order of sale—and all other irregularities in proceedings antecedent to and resulting in the probate sale, are prescribed by five years. R. C. C. 3543.

APPEAL from the. Thirteenth District Court, Parish of St. Landry. *Hudspeth,* J.

### *Kenneth Ballio* for Plaintiffs and Appellees :

1 A party who accepts the quality of universal legatee and that of executor conferred by will, probates the will, and enters into possession of the property, and "uses and treats it as his own;" he cannot long afterwards retract such acceptance, or set up the nullity of the will or its probate or the proceedings carried thereunder. 28 Ann. 697; 31 Ann. 552; 18 Ann. 141; 7 Ann. 617; 4 L. 61; 15 Ann. 529; 24 Ann. 301.

2. Parties who claim title from such a person, or who set up such proceedings as a shield or protection to their title, are likewise estopped from setting up the nullity of the will or the proceedings carried thereunder. Louque p. 223, no. 20; 15 Ann. 684; 15 Ann. 531; 24 Ann. 301; Bigelow p. 244 et seq.; 5 R. 523; Bigelow p. 473.

3. A will is revoked by the birth of a child subsequent to its date. C. C. 1705. But the nullity is relative and can be waived, and the will ratified by heirs of age.

4. Where the husband, by his will, makes his wife universal legatee, and she accepts and goes into possession of the property under the will, her paraphernal claims, if any she have against her husband's estate, will be lost by confusion. 13 Ann. 52; C. C. 2217; 3 L. 552; 4 R. 416.

5. Where a husband dies, leaving minor children and a widow, and a will making the widow universal legatee, if the widow marries, the property devised to her by the will reverts and belongs to the children of the first marriage, and she will merely have the usufruct of it. 12 Ann. 465; C. C. 1753; 10 Ann. 679.

6. The validity of a will and its probate cannot be collaterally questioned. 4. N S. 411; 8 N. S. 178, 13 Ann. 117, 5 L. 387; 6 Ann. 446.

7. The capacity of an executor or administrator, or other fiduciary cannot be questioned under a general denial or collaterally. 15 Ann. 27, 505; 5 Ann. 128, 598; 14 Ann. 706; 9 D. 113; 13 Ann. 380; 25 Ann. 54; 30 Ann. 268; 32 Ann. 897; 28 Ann. 807; 26 Ann. 330; 10 Ann. 496; 8 Ann. 35; Hen. p. 1152, no. 1.

8. A party cannot do an act which he is at liberty to abstain from, and by a mere reservation screen himself from the legal consequences of his own act; nor can he shift his position so as to defeat the action of the law upon it. 18 Ann. 141; 2 Ann. 617; 4 L. 61; 15 Ann. 520; 24 Ann. 301.

9. When the community is dissolved by the death of one of the spouses, the heirs succeeding immediately to the right of their ancestor are necessary parties to any decree affecting their interest. They have the seizin and a proprietary interest in the community, and in case of a partition, must be duly made parties or represented in the partition proceedings. If not so represented or made parties, the proceedings are null as to them. 32 Ann. 849; 33 Ann. 585; Hen. p. 743, no. 2, p. 744, no. 1; C. C. 2405-6.

10. Heirs have this seizin, even where a universal legatee is named by the will. C. C. 1607.

11. The sale of the property of another is void. C. C. 2452.

12. There can be no family meeting without an under tutor. Family meetings carried on without an under tutor are void. C. C. 275; C. C. 276, 277. He represents the minors in all cases where their interests are opposed to those of their tutor. C. C. 275.

13. An under tutor cannot bind the minors by any approval of debts or claims due by them. He has no such powers. C. C. 273 et seq.

14. A re-appraisement of property in which minors are interested can only be ordered and made under the provisions of art. 342, C. C. When otherwise made it is null.

15. Property in which minors are interested cannot be sold for less than two-thirds of its appraised value. 33 Ann. 466.

16. It is essential that a dative tutrix should only be appointed on the advice and recommendation of a family meeting. C. C. 254, 263, 270.

17. Parties interested have the right to sue to annul a sale for non-payment of the price. C. C. 2045; 24 Ann. 537; 28 Ann. 739. This action is only prescribed by ten years. 24 Ann. 537; 28 Ann. 739.

18. No prescription runs during minority except in special cases. These special cases are the exception to the general rule. *Stare decisis.*

19. Where the surviving widow and the heirs are the owners of property in indivision, the action for partition must be brought in the district court. In 1869 the parish court had no jurisdiction of a suit of that kind. 33 Ann. 585; 30 Ann. 93, 177; 31 Ann. 572; 34 Ann. 288.

20. What is not alleged cannot be proved. Hen. p. 1155, no. 3 and cases cited.

21. A general denial merely traverses the law and facts of plaintiff's case. 14 Ann. 120.

22. A special defense requires a special plea. Hen. p. 1153, no. 10 and cases cited.

23. Where a special defense depends upon the proof of a particular fact, the fact must be specially alleged. Hen. p. 1144, no. 1 and cases cited.

24. A dative tutrix cannot administer where there is a will—*a fortiori,* where an executrix has been appointed under the will. In such cases she represents only the minors. Hen. D. p. 1476, no. 11; 4 R. 42; 7 R. 242; 2 L. 299.

25. An order of a probate court, decreeing a sale of the property as a general rule, protects the purchaser. But it is subject to be attacked and set aside, as are other judgments, for instance: 1st. Where the court had no jurisdiction *ratione materiæ.* 2d. Where the parties affected were not cited or represented, and therefore not parties to the decree. 3d. Where the property belongs to a third person, a stranger to the proceedings; and many other examples might be cited. The sound rule in this regard is that that the order for the sale cures all relative nullities, but not absolute nullities. 14 Ann. 662; 11 L 149, 156; 13 L. 431; 16 L. 440; 3 R. 122; 10 R. 398; 15 Ann. 520; Cross on Pleadings, par. 305-6-7-8.

26. An order of a probate court decreeing a sale does not protect the purchaser where fraud is charged and proved. 14 Ann. 662, and cases just cited.

27. The plea of res judicata will not be sustained unless all the issues are the same. 14 Ann. 362; 24 Ann. 332; Bigelow on Est. p. 67, Intro.

28. An imperfect usufructuary must return articles or property of the same quality and quantity, or their estimated value, on the termination of the usufruct. C. C. 549.
29. Tender not necessary in this case. 34 Ann. 288.
30. Only forced heirs can sue for a reduction of a will. C. C. 1504; 12 Ann. 465.
31. A consent judgment has no force as such, except as to the parties thereto. 3 Ann. 34; 2 Ann. 483; 4 Ann. 65; 6 Ann. 790; 10 Ann. 18; 11 Ann. 696; 15 Ann. 225; 8 N. S. 347; 2 L. 148; 6 L. 354.

*Henry L. Garland* for Defendants and Appellants.

*Harry H. Hall* on the same side.

The opinion of the Court was delivered by

WATKINS, J. Plaintiffs seek to dismiss the appeals taken by Mrs. Nannie M. Morris, J. U. Payne, H. M. Payne, Mary I. Garrard and William Curley, on the grounds that they were co-defendants with Amelia E. Keller and others, against whom judgments were rendered on the 14th of April, 1883, and 20th of February, 1885, respectively, and who were not in court when appellants obtained their orders of appeal in open court on the 28th of May, 1885, and were not cited as appellees.

In the alternative, they urge that the value of the property claimed by appellants respectively, is less than $2000, and this Court is without jurisdiction *ratione materiæ*.

The motion including these objections was filed at the term of court at Opelousas, in July, 1885, but which was not passed upon by the court, and subsequently the record was destroyed by fire. This record having been substituted for the one destroyed, the motion to dismiss was supplemented in July, 1886.

In addition, a supplemental motion to dismiss was filed in July, 1886, in which are assigned the additional grounds, viz: First, that no legal order of appeal was granted Wm. Curley in his fiduciary capacity as curator; second, that neither Mary I. Garrard nor Nannie M. Morris were authorized by their husbands to execute their appeal bonds.

I

Prior to the enactment of Act 125 of 1868, amending C. P. 575, requiring appeal bonds to be made payable to the clerk of the court which rendered the judgment appealed from, the uniform current of our jurisprudence was to the effect that, when an appeal was taken from a judgment in an action on a joint contract or in a revocatory action, all who were required to be parties below must be made parties to the appeal, though a part only have appealed, else the appeal was dismissed.

Since the passage of that act, our predecessors have constantly held, and we think correctly, that when an appeal is granted in open court, and the bond is made payable to the clerk of the court, all persons *having an interest* are by law parties to the appeal—*those who are not appellants are appellees*.

In Walton vs. Police Jury, 26 Ann. 356, the court said : " The fact that only *one* of the non-resident parties executed an appeal bond, under an order in favor of *all*, cannot invalidate the appeal taken by him. Those who are not appellants are appellees, and the appellant has the right to prosecute *his* appeal, which is regularly taken, although his co-defendants may acquiesce in the judgment." 23 Ann. 370, Succession of McKenna; 26 Ann. 220, Baker vs. Thompson; 26 Ann. 312, Frances vs. Lavine.

The appellants have fully complied with the law, and all other parties having an *adverse interest* are appellees necessarily.

Appellants are clearly entitled to prosecute their appeals, although plaintiffs and appellees had obtained judgments against *other* defendants at antecedent terms of the court, who have acquiesced in them.

Whatever may be the effect of such an apparent severance through plaintiffs' instrumentality, in respect to such *other* defendants, it cannot, in any way, prejudice the rights of *appellants*.

On the alternative part of the motion, in respect to this Court's want of jurisdiction, it is sufficient to say that while the *defendants* against whom judgments were first rendered, have no interest in common with appellants claiming separate and distinct tracts of land, yet, in respect to *plaintiffs* claim of title as heirs of their father and the revocation of the probate sale of January 5, 1870, the *appellants'* claims are identical. They are inseparably blended, and plaintiffs have so treated them; and it would be against equity to permit them to gain any advantage of the appellants by reason of their having taken judgments by piece-meals against *other* defendants, and in some instances by default.

In addition to this, plaintiffs, in their petition, show that the lands which Amelia Keller bought at probate sale were valued at $39,000, and they fail to show what the *separate* value of the different tracts were which she subsequently conveyed to the defendants; and, as there is doubt with respect to the value of the several properties held by the appellants, we think it our duty, under the circumstances, to favor the right of appeal.

With respect to the remaining grounds, and which are contained in the supplemental motion, filed in July, 1886— more than twelve months

after the filing of the record—it is only necessary to observe that it came too late.

"A motion to dismiss, on account of informality in the appeal bond, or order of appeal, or even the *want* of the latter, must be made within three judicial days after the record is filed." 2 Ann. 138; 3 Ann. 326; 4 Ann. 514; 6 Ann. 115; 11 Ann. 613; 12 Ann. 745; 22 Ann. 327; 23 Ann. 467; 21 Ann. 30.

If these objections were not waived by their omission from the motion first filed, they certainly cannot be entertained at this time.

The motion is therefore refused.

---

### On the Merits.

#### I.

This suit was filed on the 24th of January, 1882, and has for its object the annulment of the various adjudications and sales made to the various defendants, and the recovery of the property described, with its revenues.

Plaintiffs are the sole surviving descendants of Lewis A. and Amelia E. Webb. The latter survived the former's death, which occurred in April, 1861, from whom they claim to have inherited the property in dispute.

On the 6th of July, 1860, Dr. Webb made an olographic will, by the terms of which he gave and bequeathed all of his estate in full property, after the debts were all paid, to his wife, Amelia Webb; and constituted her the executrix, with full seizin.

Below the signature is written this memorandum, viz: " By this will I do (not) disinherit my child, Susan Charlotte Webb, but it is made in the event of her death;" and which was signed, without date.

At the request of the surviving widow, Amelia Keller, the will was probated, letters testamentary issued, an inventory taken, and she was duly qualified and placed in possession of the testator's estate. No further proceedings were taken until after the close of the war.

In 1868, Mrs. Amelia Webb was married to Edward Galligar, who died in November, 1870.

Plaintiffs' contention is that, by her second marriage Amelia Keller " lost the property bequeathed to her by the will    *    *    *    and it became vested in her two daughters, plaintiffs in this suit—she thereafter only having the usufruct of it."

In support of this theory, they rely upon R. C. C. 1753, which provides: " If any person who marries a second time, has children of his

or her preceding marriage, he or she cannot, in any manner, dispose of the property given or bequeathed to him or her by the deceased spouse, or which came to him or her from a brother or sister of any of the children which remain.

"This property becomes, by the second marriage, the property of the children of the preceding marriage, and the spouse who marries again only has the usufruct of it."

Therefrom they contend that they are the proprietors of the whole property, of which they were seized by operation of law; and hence any subsequent forced alienation thereof was the sale of the property of another, and therefore void.

Their argument is that Dr. Webb divested himself of all of his property by the will in favor of his wife, and she had *executed the will, and gone into possession as the universal legatee,* and the property no longer formed a part of his estate. Hence, the probate sale, made on the 5th of January, 1870, was a nullity.

## II.

Not contented with this averment of title in themselves as owners by operation of law, through the instrumentality of the will, they set up certain informalities and illegalities in the probate sale to Amelia Keller and the titles of her vendees, as sustaining the charges of nullity made.

They are in substance that Amelia Keller never qualified as testamentary executrix, or *natural* tutrix, and all *acts* done by her, as such, are void.

That the appointment of Amelia Keller as dative tutrix was null and void, on account of the nullity of the family meeting proceedings resulting from the *non*-appointment of an under tutor to fill an existing vacancy.

That the order of sale was improvidently granted, for the reason that the *estate* of Lewis A. Webb owed no debts; and particularly, because it did not owe the debt alleged to have been due to Amelia Keller, surviving widow; or, if it did, "said claim had never been recognized, or proof thereof adduced before the family council, or before the court; and *that the order had been granted without sufficient evidence.*"

That the property was sold for less than two-thirds of its appraisement, "which real and true appraisement was that of the first inventory," taken April, 1861, and not the one made in 1869, and which they charge to have been fraudulently made "to enable Amelia Keller to bid the whole of it in for a supposed claim due her as alleged of $40,000."

That Amelia Keller never qualified as dative tutrix, gave no bond, and failed to cause the registration of proper certificate "and all orders and proceedings taken by her in her said capacity are null and void."

There are some other objections, but they are only in the enlargement of those quoted.

To this action, appellants urged the plea of *res judicata* resting on a final decree of this Court in suit of Susan Webb, Wife, vs. Amelia Keller, J. U. Payne, Intervenor, 26 Ann. 596, and on the judgment homologating the executrix's tableau of debts and distribution in the Succession of Lewis A. Webb, on the 25th of February, 1870.

In their answers they denied all the averments of the plaintiffs' petition, and alleged that they derived title from Amelia E. Keller, widow of Galligar, who acquired on the 5th of January, 1870, at a probate sale made under an order rendered by a competent officer having jurisdiction of the subject matter and of the persons interested.

All of appellants plead the prescription of one, three, four, five and ten years against the action of plaintiffs and as a muniment of their titles.

The defendants, J. U. Payne and others, alleged that they had contested the title to the property now claimed in a litigation between Susan Webb and themselves.

### III.

The record discloses the following pertinent facts necessary to be detailed, in order to a proper understanding of the contention of the parties.

On March 16, 1869, the testamentary executrix represented to the probate court "that the succession is now chiefly composed of land and the improvements thereon, and that in order to settle the said estate, which petitioner desires to do, it will be necessary to cause the property to be reappraised. Further represents that a sale of the property will be necessary in order to settle the succession, pay its debts and make the necessary partition between petitioner and her children, in the event of the succession proving solvent; petitioner being a creditor with a tacit or legal mortgage for some $40,000," and she prayed for an order of sale. Accordingly an inventory was ordered and a family meeting was convoked for the purpose of giving advice concerning the interest of the minors and of fixing the terms of sale.

The *proces verbal* of the proceedings of the family meeting show that "after having duly deliberated on said subject, they declared themselves unanimously of the opinion that it will be to the interest of said minors *that the whole* of the *property* belonging to the succes-

sion of Lewis A. Webb, either separate or community be sold for cash, payable on the day of sale."

The executrix petitioned for the homologation of the deliberations of the family meeting, and on the 2d of December, 1869, the following order was entered, viz : " Let the proceedings of the family meeting mentioned therein be homologated and approved ; and let the property of the estate of Dr. Lewis A. Webb, deceased, be sold for cost, as prayed for by petitioner, and by a duly qualified auctioneer.

" Given in chambers, at Opelousas, this 2d of December, 1869.

" A. GARRIGUES, Parish Judge."

On the 5th of January, 1870, a public probate sale was made by a duly commissioned auctioneer, of the various properties included in the inventory of Lewis A. Webb, both separate and community, and the same were adjudicated to Amelia E. Keller, surviving widow, for $25,725, with the exception of a tract of 404-94 acres adjoining the sugar plantation.

On the 25th of February, 1870, the executrix filed and caused to be duly advertised, a tableau and classification of the debts of the deceased and distribution of the assets of said estate, and due notice was given to the undertutor for the two minors, plaintiffs herein.

On this tableau was entered the mortgage indebtedness of Dr. Lewis A. Webb to his surviving widow, Amelia E. Keller, aggregating $36,602 23, being the sum inherited by her from her deceased mother, Martha C. Hargrove, and which were received and appropriated by her husband, and for which amount she had and has a legal mortgage against his estate.

The duly homologated tableau in the succession of Martha C. Hargrove shows the share of Mrs. Amelia Webb to have been, in exact figures, $37,289 92⅜.

The items composing said sum are specifically enumerated on the tableau of the executrix, and it is accompanied by the declaration that her claims were duly registered in St. Landry and Avoyelles parishes.

Other debts appear on said tableau, exclusive of succession debts, and charges which of themselves aggregate $7,000.

On the 4th of April, 1870, this tableau was duly homologated, and the executrix was ordered to distribute the funds realized from the sale, in accordance therewith ; and G. W. Hudspeth, one of the attorneys, testified that " the price of the adjudication was paid in actual money, but was credited on Dr. Webb's indebtedness."

All other defendants acquired title from Amelia Keller, by various *mesne* conveyances, all translative of property, and duly recorded.

## IV.

We will first consider the plea of *res judicata*.

Referring to Webb vs. Keller, Payne et als., intervenors, 26 Ann. 596, we discover that the Susan Webb, who is one of plaintiffs in this suit, was plaintiff in that, praying that the probate sale herein complained of, be declared null, and "that the property be declared to belong to her and her sister."

The court held: "It appears to us that the title to the property purchased by the defendant on the 5th of January, 1870, is, as to third parties, good and valid. Defendant was the executrix of the will. She obtained authority to sell the property of the testator in order to pay debts of his succession, and to make a partition between himself and the heirs.

"An appraisement of the property was ordered; a family meeting was convened, who recommended that the whole property of the succession, whether separate or community, be sold for cash.

"The undertutor concurred in this advice. The property was sold; the defendant became the purchaser. She subsequently furnished an account of her administration, which account, after due publication, was homologated. It was after this sale that the intervenor's mortgage was taken. The title being in the defendant, the property was hers, to do with it as she pleased. She could sell it, or mortgage it Those who dealt with her did so under the faith of judicial proceedings. To set aside the sale made under the authority of justice, and thus destroy the mortgage which was taken as the result thereof, and which was accepted in good faith, would be to make like proceedings snares instead of shields. * * *

"Plaintiffs' tutrix may have assumed responsibilities towards her, and may have been derelict in her duty. But this is no reason why those who acted in good faith, and whose acts were based upon the orders of a court of competent jurisdiction, should be made to suffer."

In so far as Mrs. Susan Quirk's claims and pretensions are concerned, they are clearly covered by, and embraced in that decree; and the plea of *res judicata* must be sustained. It does not matter that different allegations are made, and somewhat variant issues are now presented, the case is not altered, and the issue is the same.

In respect to the other plaintiff, Mrs. Beulah Beggs, the decree

quoted does not establish *res judicata,* but it furnishes a forcible precedent.

## V.

Notwithstanding the fact that the second marriage of Dr. Webb's surviving widow divested her of all claim of title, as universal legatee, under his will—conceding *arguendo* that she had asserted and was previously in the enjoyment of it—and yet, the plaintiffs certainly did not, and could not, acquire any title to *her* one-half of the community property, which was the larger and most valuable part of the estate.

Hence, the claims of Mrs. Quirk must be restricted to a one undivided fourth of the community, and to undivided one-half of the separate property of Dr. Webb.

## VI.

The record satisfies us that Amelia Keller did not accept her husband's succession, and never performed a single act of heirship, or assumed or held possession, as owner or legatee. But, if she had entertained such an idea she could not have successfully carried same into effect of her own free will and accord.

In Bird vs. Succession of Jones, 5 Ann. 644, the Court said: "Having, as executor, accepted the trust and seizin, it was not in his power to withdraw, at his own discretion, and relieve himself from the obligation and duties which he had judicially assumed."

To the same effect are Wells vs. Wells. 30 Ann. 936; Succession of Frazier, 35 Ann. 382; and Succession of Kate Townsend, 37 Ann. 408.

In this last case, this Court said: "An executor, who has qualified and who is at the same time universal legatee, cannot, by any *act purely his own,* cease to be executor and represent himself as sole heir. He cannot be permitted to deny his capacity as executor by setting up that he has accepted unconditionally as universal legatee, and holds the estate, not as executor, but as owner."

These decisions have been closely followed in the more recent cases of Succession of Kate Townsend vs. Sykes, 38 Ann., ——

In plaintiffs' brief, we find the following concession on this subject, viz: "She voluntarily accepted the will of Dr. Webb and the bequest to her; probated the will; qualified as testamentary executrix under it over twenty-four years ago; and in all proceedings and pleadings by her in the estate of Dr. Webb, styled herself 'testamentary executrix,' and made the sale of January 5, 1876, as such." Citing 18 Ann. 141; 7 Ann. 617; 4 La. 61; 15 Ann. 520; 24 Ann. 301.

5

Also : "Besides, we contend that the validity of the will, and its probate, cannot be collaterally attacked or questioned, as is now sought to be done." Citing 4 N. S. 411; 8 N. S. 178; 13 Ann. 117; 5 La. 887; 6 Ann. 446.

Again : "It is undeniable that all the orders and proceedings taken out by Mrs. Galligar in the succession of Lewis A. Webb, including the order for the probate sale of 1870, were taken by her in her capacity of testamentary executrix of his last will.   *   *   *   In fact, as she was acting under the will, in administering the property of the estate, she could act in no other capacity than testamentary executrix."

These admissions serve as a complete answer to the charge in plaintiffs' petition that Amelia Keller was never qualified as testamentary executrix, and that all acts done by her in that capacity are null and void.

### VII.

Having fully conceded, as indeed the record otherwise fully proves, that Amelia Keller administered the estate of Dr. Webb as testamentary executrix under his will, and as such procured the sale of the property, it follows as a necessary consequence that his acts as such are legal and valid to all the world, and cannot be assailed in a suit between other parties.

We have the admission in plaintiffs' brief to this effect, viz : "Besides, the capacity of an administrator, executor or other fiduciary, cannot be collaterally assailed," etc. ; citing authorities :

In 32 Ann. 364, Estate of Altemus, the Court said : " Mere *illegality in the appointment* of an administrator, will not vitiate the acts done under it.   The *acts* of the officer in such case are valid, although he should have been illegally appointed." Succession of Dugart, 30 Ann. 268 ; Bienvenu vs. Parker, 32 ——

This principle applies with equal force to the appointment of Amelia Celler as executrix and dative tutrix, and to the appointment of under tutor.

### VIII.

The complaint made of the order of court directing the sale on the ground that the estate of Dr. Webb owed no debts, or, if it did, none that had been recognized and proved before the family meeting or the court, does not go to the court's want of jurisdiction.   The debts were subsequently placed upon a tableau and proved to the satisfaction of the judge, who was competent, and same was homologated; and he directed the proceeds of sale to be applied to their payment.   This

was a mere irregularity and not a cause to challenge the proceedings as null and void.

## IX.

The objection urged that the property was not adjudicated to Amelia Keller for two-thirds of the appraisement made in 1861, is wholly untenable. This Court will take judicial cognizance of the fact that the civil war intervened between that date and the date at which the second inventory was made in 1869. The proof shows that a once valuable plantation was completely devastated and laid waste by the transit of the contending armies, and that the value of the property was greatly reduced; and consequently a new appraisement was quite necessary in order to effect the sale of January, 1870.

It was the duty of the judge to cause the property to be estimated by experts before proceeding to the sale thereof, if it was such property as had remained unsold for more than one year after the appointment of the executrix. R. C. C. 1169, 1170; 33 Ann. 466, Succession of Hood.

At an offering under these articles, the property was legally adjudicated at two-thirds of that last valuation.

## X.

It is the well settled jurisprudence of this Court that the purchaser at a sale made under an order of the probate court, which is a judicial one, is not bound to look beyond the decree recognizing its necessity.

"He must look to the jurisdiction of the court, but the *truth of the record*, concerning matters within its jurisdiction, cannot be disputed." 14 La. 146; 15 La. 182; 7 R. 66; 7 Ann. 468; 14 Ann. 154, 622; 26 Ann. 596, Webb vs. Keller; 29 Ann. 536, Frazier vs. Zylick; 31 Ann. 280, Heineman vs. Janney. "The purchaser at a judicial sale of property of the succession is not bound to look further back than the order of court directing the sale." 18 Ann. 485, Succession of Hebrard; 21 Ann. 505, Woods vs. Hilliard Lee; 11 R. 72; 16 La. 440; 34 Ann. 1004; Nesom vs. Weis.

## XI.

Prescription of five years, R. C. C. 3543, provides : "All informalities connected with, or growing out of any public sale made by any person authorized to sell at public auction, shall be prescribed against by those claiming under such sale, after the lapse of five years from the time of making it, whether against minors, married women or interdicted persons." 28 Ann. 571, Routh vs. Citizens' Bank; 29 Ann.

536, Frazer vs. Zylick; 34 Ann. 209, Roberts vs. Zansler; 34 Ann. 594, Heirs of Miller vs. Ober et al.; 21 Ann. 585, Pascaud vs. Pourle; 10 Ann. 684, Calais vs. Seinéré; 3 Ann. 328, Vaughan vs. Christine; 32 Ann. 337, Porter vs. Hornsby; 32 Ann. 437, Miller vs. Miller; 33 Ann. 1043, Mulholland vs. Scott; 33 Ann. 673.

We regard this plea as strictly applicable to all of the alleged nullities propounded as arising out of proceedings antecedent to and resulting in the probate sale of January 5th, 1870.

The views hereinabove expressed in regard to the various intricate and conflicting claims of the plaintiffs, and the disposition made of the plea of five years' prescription renders a decision of the defendants' other pleas unnecessary.

Of the plea of prescription of ten years, urged by plaintiffs against the debt claimed by Amelia Keller against the estate of Dr. Webb' and of the plea of peremption of her tacit mortgage, it is sufficient to say that no prescription run against her demand during the lifetime of her husband, and the tableau acknowledging it was filed and homologated within less than ten years thereafter, and more than years elapsed thereafter before this suit was filed.

There was no law requiring the inscription of her tacit mortgage until the 1st of January, 1870—only *four days* prior to the sale.

We think the judgment in favor of the plaintiffs and against the appellants was erroneous, and it is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered in the court below, it is ordered, adjudged and decreed that the judgment appealed from, in respect to the appellants, be annulled, avoided and reversed, and that all the demands of plaintiffs against them be rejected at their cost.

Mr. Justice Todd dissenting on the motion to dismiss the appeal, takes no part in opinion upon the merits. Mr. Justice Fenner recuses himself on the ground of relationship to one of the defendants in the suit.

---

### DISSENTING OPINION.

TODD, J. This was a suit instituted to annul an order for the sale of succession property, and the sale made thereunder, and to recover the lands purporting to have been conveyed by said sale; and the suit is against the party provoking the sale and the adjudicatee of the sale, and those who hold under her by mesne conveyance.

Among the grounds for the dismissal of the appeal, I find one substantially to the effect:

That all the parties to the suit in the lower court are not made parties to the appeal.

As the basis of the title to the lands held respectively by the several defendants was the succession sale mentioned, and the main and controlling object of the suit was to have the sale in question annulled, it is evident that all the defendants had a joint interest in the result of the suit, and were proper, if not necessary, parties to the same. The suit was not merely a cumulation of separate demands against different parties, between whom there was no privity or joint interest.

The record shows that there are a dozen or more defendants in the suit; that a judgment was rendered against a number of them on the 14th of April, 1883; another judgment was rendered against certain others of them on the 28th of February, 1885, and against the remaining defendants on the 22d of May, 1885—being at different terms of the court.

The only appellants to this Court are the defendants against whom the last judgment was rendered. The other defendants, against whom the previous judgments were rendered, were never cited as appellees, and the plaintiffs urge that these last referred to are not therefore parties to this appeal, and that the appeal should therefore be dismissed.

This is met by the appellants' counsel by the contention that since the statute was passed, providing that appeal bonds should be made payable to the clerk, and this appeal having been taken by motion in open court, that all who are not appellants are necessarily appellees, and refers to 26 Ann. 220, 312, 356; 23 Ann. 370.

This would undoubtedly be correct if the judgment had been rendered against all the defendants at the same term of the court, and the appeal had been taken by these appellants in open court at the same term.

By a fiction of law all parties to such judgments are considered as present in court during the entire term at which the judgment is rendered, and thereby are affected by the appeal. But it has been repeatedly held, and may now be considered settled, that an appeal taken in open court at a term different from that at which the judgment was rendered, does not of itself make parties to the appeal the parties to such judgment. They must be cited. Hardy vs. Heaerson, 27 Ann. 95; Wheeler & Pierson vs. George A. Peterkin et al., not yet reported, and authorities there cited. There was no citation to the

parties to these prior judgments, nor to any of them, and therefore they are not before this court.

Among others not cited nor made parties to the appeal is Amelia E. Keller (Widow Gallager), who is charged as having fraudulently procured the order for the sale of the property of the succession, and purchased it illegally, and whose purchase is the very foundation of all the rights that the defendants claim to their respective properties, and who, according to the record, stands bound to them as warrantor.

To say nothing of the other parties to the suit, I cannot well conceive how this court could pass on the validity of the sale in question when the party who procured the order for the sale and the purchaser at such sale is not before us.

One of the counsel for the appellant, in his brief, describes Mrs. Keller (quoting), " as a necessary co-defendant in the suit" with his client.

The motion to dismiss, therefore, in my opinion, should prevail.

I therefore dissent from the opinion and decree of the majority maintaining the appeal, and thus dissenting on this point, I take no part in the opinion and decree relating to the merits of the controversy.