## No. 10,967.

### DENNIS LONG vs. JOHN E. KEE.

1. When in the course of a *quasi* partnership settlement a sequestration is obtained of property mutually claimed by each one of the partners the strictness of the rule applicable to an equitable estoppel by conduct may be somewhat relaxed.

2. If in such case the defendant sets up a reconventional demand for property alleged to have been taken by the sheriff and not reported in his return, allegations should describe it with some degree of precision, in order that proof be admissible.

3. When *quasi* trust relations exist between such parties, the burden of proof rests upon that party to whose care and fidelity the affairs of such *quasi* partnership were entrusted to make a fair and clear showing as to the basis of settlement.

APPEAL from the Twenty-fifth District Court, Parish of Lafayette. *Mouton, J.*

*Gus. A. Breaux* and *C. DeBaillon* for Plaintiff and Appellant.

*Jos. A. Chargois, Chas. D. Caffery* and *Julian Mouton* for Defendant and Appellee.

### ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

WATKINS, J.   Defendant and appellee seeks to dismiss the plaintiff's appeal on account of certain alleged imperfections in the appeal bond.   To this motion appellant's answer is, that it comes too late, having been filed more than three days after the filing of the transcript, and after the return day.   This answer is good and disposes of the motion, as the transcript was filed on January, 20, 1892, subsequent to the return day, the 18th thereof, the motion to dismiss having been filed on the 25th of said month.   Webb vs. Keller, 39

An. 55; St. Romes vs. Cotton Press Co., 31 An. 224; Holbrook vs. Holbrook, 32 An. 13; Succession of Charmbury, 34 An. 21; 2 An. 138; 3 An. 326; 4 An. 514; 6 An. 115; 11 An. 613; 12 An. 745; 22 An. 327; 23 An. 467; 21 An. 30.

The motion is, therefore, denied.

### ON THE MERITS.

When this case was under consideration last, the pleadings were analyzed, the respective positions of the parties stated, and many of the issues decided. 42 An. 899.

From our opinion it appears that the plaintiff and defendant entered into a contract on the 26th of February, 1886, in which, amongst other things, it was stipulated that the former furnished his plantation with all its ameliorations and equipments, and some live stock —of which a description is given—as passing with the place into the joint adventure; and other cattle which did not. Thereunder the defendant entered into possession, stipulating that he was to give his time and undivided attention to the supervision and management thereof, and to the care and protection of *all* the live stock; and, as a consideration for his services, he was to have the *profit* arising from the cultivation of the annual crops, and one-half the *increase* of the live stock.

Claiming the right to terminate the contract on account of defendant's mismanagement, and retake possession of his property, the defendant resisting, plaintiff caused *certain specified* property to be sequestered judicially, and, in default of defendant exercising that right, gave bond therefor and took it into possession.

On the trial in the District Court, plaintiff's sequestration was dissolved and defendant restored to possession of the plantation and property that was sequestered.

On appeal to this court the judgment rendered was reversed; many issues therein were decided, as above stated; the contract was held to have been legally terminated on the 31st of December, 1889, and plaintiff's right to possession recognized; and the cause remanded for the trial of three issues, viz.: (1) damages inflicted upon personal property; (2) defendant's right of ownership of personal property claimed; (3) the adjustment of his claim to a share in the *increase* of the live stock—all of which are circumstantially set out in an extended answer and reconventional demand. With defendant's de-

mands thus reformed and restated, the case went back to the District Court and was again tried, the defendant, apparently, abandoning his claim for damages and only insisting on his other demands; that is to say, his demand for restitution of personal property and an interest in the live stock (a minutely detailed list of which is appended to his answer), the aggregate value of the former of which he places at $6275.85, and of the latter at $2550, the two aggregating $8625.85.

There was judgment commanding the plaintiff to make restitution to the defendant within thirty days after the finality of the decree, of the following items and articles of property, or in the alternative to pay the various sums set opposite said items as the respective values thereof, viz. :

| | |
|---|---:|
| Five horses and three mules | $710 00 |
| Blacksmith shop and tools | 68 80 |
| Old buggies, etc | 79 50 |
| Poultry, pigs, etc | 159 50 |
| Vegetables, etc | 30 00 |
| Farming implements, etc | 363 75 |
| One rice thresher | 250 00 |
| Aggregating in value | $1,661 55 |

It further commands plaintiff to make restitution to defendant of one-half of the increase of horned cattle, the whole number of which is fixed at 161 head, thus entitling him to eighty and one-half head, and decreeing that in default of making restitution the plaintiff shall pay him therefor at the rate of $10 per head, or $800 for the whole number.

From this judgment which condemns the plaintiffs to surrender property, or to pay an alternate value of $2461.55, he prosecutes the present appeal.

It is of importance to mention that, after disposing of the foregoing property, the judgment decrees that "all other property herein claimed by the parties to this suit  *  *  belongs to Dennis Long."

## I.

The first question to be disposed of is the claim of the defendant to an interest in the *increase* of the horned cattle, which is stated in his answer and reconventional demand to be $2550 in value, but which the judgment fixes at $800, and which must be accepted as the limit of his demand, inasmuch as he has not, in this court, requested an increased allowance.

As a basis of the judgment we quote the following therefrom, viz. :

It is ordered, adjudged and decreed that the amount of stock of horned cattle *at the time* of *sequestration* be and the same is hereby recognized at 430 head; and that the interest of J. E. Ker, defendant, in the *increase* thereof be and the same is fixed as follows, viz. :

| | |
|---|---:|
| First deduct cows | 156 |
| Three years old | 35 |
| Two years old | 27 |
| One year old | 28 |
| Calves | 19 |
| Oxen | 4 |
| Aggregating | 269 |
| Leaving an increase of | 169 |
| Equal | 430 |

In the preceding part of the judgment it is stated that there was ascertained, from the evidence, to have been *on hand at the date contract was entered into* 269 head of horned cattle; and it is on that basis that the calculation is made.

In our *former* opinion it is stated, viz. :

" Now, in this case, the testimony of the defendant is that, at the time of making the contract of 1886, *he did not count the cattle and could not state the number.* He took all the cattle on the place and was to have an interest in the increase. Of the calves that were branded in 1886, 1887 and 1888, he was unable to say how many survived.

" It is quite unnecessary for us to examine or discuss any additional testimony on this branch of the case, as it is manifest that, under this admission, no settlement can be made at this time," etc. 42 An., pp. 997, 998.

We had before us *then*, as we have *now*, the original agreement, which is authentic in form, which specifically declares that, with the plantation and its appurtenances and farm implements, the plaintiff *furnished* to the defendant " three mules for which (he) paid $375, Fly, Dolly and Queen;" and, also, that he " further furnished *live stock, cattle,* sheeps, etc., at a cost of $4165," in addition to seventeen head of Kentucky throrough-bred cattle, not covered by the agreement.

We had before us *then*, as we have *now*, the admission in defendant's answer, that it was he who proposed to go into the stock business with the plaintiff on " the condition that (the latter) would *furnish the money to buy the cattle,* and he (defendant) was to be half

owner thereof, and pay back to plaintiff one-half the money with interest;" and that this proposition was accepted by the plaintiff, who "then advanced $4000, which was expended by defendant in the purchase of cattle."

That this agreement was subsequently modified by the agreement of February, 1886, " whereby plaintiff became *entire and sole owner of the cattle* and sheep," etc., and that he had said live stock on the place at the time of the execution of the agreement of 1886, and same were kept there afterward, as well as such as have been placed there since.

This admission in the defendant's answer is confirmatory of the truthfulness of the recital of the agreement as to the *value* of the live stock invested under the contract; and, as the judgment found there was on hand *at date of sequestration* 430 head of cattle, which, valued, as other cattle were, at $10 per head, would have aggregated $4300 in value, there would seem to be, practically, no *increase* for division—the difference between the cattle purchased and on hand in 1886, and those on hand in 1890 being only fourteen (14) ; and this difference is nearly offset by the thirteen (13) head of cattle the defendant confesses to have disposed of in violation of a stipulation of the agreement to the contrary, and the value of which he places at $123.

The memorandum list appended to the plaintiff's petition calls for 600 head of cattle, *as on hand at date of contract*, which is readily explainable by taking as the initial point for the calculation a smaller price per head, say $7, which would produce the value of $4200, or a fraction above the value stated in the contract, viz.: $4165, and is possibly a more accurate estimate. But this would show a *loss* of 200 head of cattle, or, at $7 a head, an aggregate *diminution* of $1400 in the stock which was invested in the enterprise originally.

The judgment fixes the same number and value of the stock on hand as that stated in the sheriff's return on the writ of sequestration; and the list appended to the defendant's answer only shows the *net increase* to which he alleged himself entitled, *i. e.*, 250 head of cattle.

An examination of the reasons which the judge assigns as the foundation of his decree, in this respect, simply discloses this statement, viz.:

" As to the number of cattle furnished by Long, under contract of 1886, I conclude that at the time of the contract there were 238

head; bought from Sterne 7, from Torrence 14 and from Hawkins 10, making a total of 269.''

Then follows, immediately after this quoted paragraph, the tabulated statement and conclusion related above. The judge does not make any reference to the evidence of witnesses on which this conclusion is based, and a patient examination of the record has failed to disclose any. And if there was any such evidence, its reliability would be, evidently, problematical. The defendant was, on the last trial, as he was on the former trial, fully examined and cross-interrogated, without, in any material respect, bettering his case; and, as plaintiff in reconvention, he, evidently, carries the burden of proof. It is our deliberate opinion that the judgment is in error, in this respect, and defendant's demand, *pro tanto*, should be rejected.

II.

With regard to the defendant's claim for personal property, or its value, the difficulties of solution appear to be greater than those in reference to the increase of stock. They arise from the fact that this is a *quasi* partnership statement of ordinary planting partners and stock raisers, of which the defendant had the exclusive use, control and management—the plaintiff residing in the State of Kentucky, and possessing no information other than such as it pleased the defendant to disclose.

In our former opinion we held that the agreement between the parties, '' although styled a partnership, is a contract of hire of labor,'' that '' the plaintiff had just grounds for his sequestration,'' and had the legal right to put an end to the agreement as he did.

In that opinion defendant was treated as, in some sort, an unfaithful agent, who had abused the confidence and trust his lessor or principal had reposed in him, and upon the principles of equity he must be held to a strict accountability, and required to make clear proof of his demands.

This fact appears prominently at the opening of the discussion, viz.: that upon no theory has plaintiff been benefited by the transactions of many years, notwithstanding he was the owner of all the property, primarily, and furnished large sums of money to the defendant.

It is quite true that evidence of such advances of money was rejected by the district judge, on the ground that such proof did not

correspond with any averments in the petition; but we are of opinion that his ruling was erroneous, and that plaintiff, occupying the position of defendant in reconvention, had the right to introduce *such* evidence in rebuttal of the defendant's claim, without making any plea—replications not being permissible. This view is supported on the hypothesis of plaintiff's counsel, that these moneys were invested in stock and personal property, of the kind mentioned in defendant's reconventional demand, and should be carried into the calculation of the values for which he insists plaintiff is responsible; and it seems so manifestly just and reasonable that, to our minds, there is no escape from this conclusion.

This much having been premised, we will dispose of the contentions of the plaintiff, which are set up as a bar to the prosecution of the defendant's claim in reconvention, viz.:  (1) that the latter having pointed out to the sheriff the property for sequestration he is equitably estopped by conduct from subsequently asserting his ownership of same; (2) that said defendant having, during the period of the contract, had the personal property assessed as that of the plaintiff, and upon his own affidavit, he is likewise estopped from making claim to it.

While under ordinary circumstances such considerations would have great weight, yet under the exceptional circumstances of this case they can not be deemed controlling; first, because the sheriff was furnished with a detailed list of the property intended for sequestration, and a seizure of which was demanded, and it is likely enough that the defendant merely indicated *where such* property could be found, without intending to waive or abandon his right; second, because of the fact that defendant admitted the ownership of the plaintiff in the real estate and *some* of the stock and personal property, of which he was also part owner, he may have thought an assessment *solely* in the name of the plaintiff would suffice, and inflict no injury upon the State.  Such an assessment can not have any real substantial bearing upon the rights of the parties, and we must decline to consider it as such in this case.

Plaintiff's further contention is that no claim of property can be entertained and decided under a proper construction of the issue raised in defendant's answer other than such as appertains to the property that was sequestered and made mention of in the sheriff's return; and we think there is great force in this contention.

The plaintiff's counsel was careful to make out a list of property he desired seized, and handed it to the sheriff; and that is the property he sequestered in part—though he sequestered some *additional* property; but, in the answer there is a declaration to the effect that the sheriff did seize and actually take into his possession *other property* belonging to him of which no account is taken in the inventory and return, and for which he makes claim, because his contention is that when plaintiff gave bond and released the property from seizure, he took possession thereof and placed it in the hands of his agent, where it now is. But there is no list or description of the particular property referred to whereby it can be identified with any degree of certainty; and to hold an absentee landlord to a rigid accountability for large values predicated upon such an averment would be manifestly unjust. The kind and character of the property referred to is given in the judgment and referred to in a previous paragraph of this opinion.

We think it better to limit this decision to the property sequestered, reserving the rights of the defendant to make claim to any other property of which the plaintiff may be illegally possessed.

Confining ourselves to an examination and comparison of the items and amounts stated in the judgment, with those enumerated in the sheriff's return, we find the following to be a just and proper settlement between the parties, to-wit:

That the following items of property listed in the judgment be reduced in value by the following amounts, viz.:

| | |
|---|---|
| The mule Mary by | $75 00 |
| The mule Rock by | 35 00 |
| The mule Jane by | 50 00 |
| The mare Katy by | 25 00 |
| The mare Bello by | 20 00 |
| The mare Queen by | 50 00 |
| The horse Rondeau by | 75 00 |
| The horse Ker by | 10 00 |
| Two horse carts by | 20 00 |
| Two buggies by | 10 00 |
| One lot of chickens by | 6 70 |
| One lot of geese by | 3 80 |
| Aggregate reduction of | $380 50 |

That the following items of property be and the same are to be stricken from said list, viz.:

| | |
|---|---|
| One duck at | $0 25 |
| One saddle at | 7 00 |
| Five sows with pig | 45 00 |
| One boar | 15 00 |
| Twenty-six head of hogs | 78 00 |
| Seven sugar coolers | 28 00 |
| Aggregating in value | $173 25 |

These diminutions and reductions will operate a change of the alternate values of the articles specified, by the total sum of $380.50, and a deduction from the list of property which the judgment decrees to belong to the defendant, of the articles last enumerated, having an aggregate valuation of $173.25.

And as thus altered and amended the judgment should be affirmed.

It is therefore ordered and decreed that the judgment appealed from be amended in the following particulars, viz.:

(a) By eliminating altogether the claim and demand of the defendant for a share in the *increase* of the horned cattle, and therein estimated to be worth $800.

(b) By reducing the values of the various items of property listed above, by the amount of $380.50.

(c) By rejecting and disallowing the defendant's claim to the ownership of other articles enumerated above, valued at $173.25.

And it is further ordered and decreed that, as thus amended, said judgment be affirmed at appellant's cost—the right of defendant being reserved to claim any other property than such as was sequestered; and the right of plaintiff is, also, reserved to claim of defendant an account and settlement of moneys had and received.