No. 2123

Second      Circuit

SULLIVAN v. TREMONT & GULF RAIL-
WAY COMPANY

(December 10, 1925, Opinion and Decree)

(February 8, 1926, Rehearing Granted)

(June 2, 1926, Opinion and Decree on
Rehearing.)

(*Syllabus by the Editor.*)

1. Louisiana     Digest—Appeal—Par.     515,
520.

If the record does not contain an order of·
appeal or even a petition or motion
for such order, the appellate court
will dismiss the appeal on its own mo-
tion.

ON APPLICATION FOR A REHEARING

2. Louisiana     Digest—Appeal—Par.     553,
558.

Where the order of appeal was granted but
was omitted from the transcript due
to an oversight of the clerk a rehear-
ing will be given the case in the appel-
late court to show that the appeal was
properly taken and to consider the
case.

ON REHEARING

3. Louisiana    Digest—Railroads—Par.    60,
62.

The employees of a railroad are negligent
if they fail to have someone at a cross-
ing to assist in preventing an accident
during switching operations in which
freight cars are backed over the cross-
ing without a lookout.

4. Louisiana    Digest—Railroads—Par.    63,
64.

It is the duty of a person approaching a
railroad to stop before crossing, and
after stopping to look and listen, not
in a perfunctory manner, but in an
effective way in order to accomplish
the end intended by the rule.

5. Louisiana   Digest—Automobiles—Par. 7,
7 (b).

Contributory negligence of the driver of an
automobile at a railroad crossing bars
recovery for the damage done by a,
collision with a train.

(Civil Code, Art. 2315.   Editor's note.)

Appeal from the Fifth Judicial District
Court of Louisiana, Parish of Jackson,
Hon. J. E. Reynolds, Judge.

Action by W. A. Sullivan against Tre-
mont & Gulf Railway Company.   There
was judgment for plaintiff and defendant
appealed.

Judgment reversed.

T. S. Price, of Ruston, attorney for plain-
tiff, appellee.

Theus, Grisham and Thompson, of Rus-
ton, and J. C. Pearce, of Winnfield, attor-
neys for defendant, appellant.

CARVER, J.    The record in this case
does not contain any order of appeal or
even petition or motion for such order.

Although no motion has been made to
dismiss the appeal, on the authority of
Gagneaux vs. Desonier, 104 La. 648, 29
South. 282, we feel constrained regretfully
to dismiss the appeal on our own motion.

In that case the record showed that the
appellant requested the court to fix the
amount of the appeal bond and that the
court did fix it, but because it did not show
the grafting of an order of a formal order,
the court dismissed the appeal.

It is true that a motion in that case
was made to dismiss, being made, though,

more than three days after the return day. The court states that appellant, in support of his contention that such an objection came too late after three days, cited the following cases, namely:

Murray vs. Bacon, 7 N. S. 271.

Temple vs. Marshal, 11 La. Ann. 613.

Kohn vs. Davidson, 23 La. Ann. 467.

Francis vs. Lavine, 26 La. Ann. 312.

Holbrook vs. Holbrook, 32 La. Ann. 14.

Hall vs. Nevill, 32 La. Ann. 326.

Succession of Chamburg, 34 La. Ann. 25.

Webb vs. Keller, 39 La. Ann. 55, 1 South. 423.

Long vs. Key, 44 La. Ann. 309, 10 South. 854.

State vs. Callac, 45 La. Ann. 27, 12 South. 119.

Naghten vs. Naghten, 48 La. Ann. 769, 19 South. 762.

Mutual Life Ins. Co. vs. Houchins, 52 La. Ann. 1139, 27 South. 657.

The court stated that to the above might be added:

O'Reilly vs. McLeod, 2 La. Ann. 138.

Walker vs. Sauvinet, 27 La. Ann. 314.

The court then says:

"We have examined the decisions referred to by appellant. Most of them declare that the defects in orders of appeal, or in bonds of appeal, which if not objected to within three days, are to be abandoned or waived, are irregularities in orders of appeal actually granted or in bonds actually furnished. They do not declare that objections that 'no order' of appeal was granted, or that no bond was furnished, have to be made within three days, and if not so made will be considered abandoned or waived. Murray vs. Bacon, 7 N. S. 271; O'Reilly vs. McLeod, 2 La. Ann. 138; Temple vs. Marshall, 11 La. Ann. 613; Walker vs. Sauvinet, 27 La. Ann. 314; State vs. Callac, 45 La. Ann. 27, 12 South. 119, and Webb vs. Keller, 39 La. Ann. 55, 1 South. 423, are, however, cases where expressions to that effect will be found. These cases all refer to Murray vs. Bacon as the original authority for such a declaration. All that the court said in that case was that 'the appellee had moved to dismiss the appeal for an irregularity in the manner of bringing it up. That this motion came too late. The Code of Practice excluded all the answers except those which pray for a confirmation of a judgment if not put in within three days after the record was filed in the Supreme Court.'

"It will be noted that the court does not state what the objection was which was made, and that it refers to it as directed at an 'irregularity in the manner of bringing the appeal up'. It does not pretend to exclude objections of a jurisdictional character which it would be the right or duty of the court to notice ex officio and to dismiss the appeal of its own motion."

The court then proceeds to discuss many of the cases cited, after which it says:

"We are of the opinion that the granting by the lower court of an order of appeal is a jurisdictional fact, and that the absence of such an order should be noticed ex officio by the appellate court and acted upon of its own motion. The failure of the appellee to urge the objection, even if it had the effect of estopping him from filing a formal 'motion to dismiss' as appellant contends it does, would not preclude him from suggesting or bringing the matter to the knowledge of the court. Upon coming to such knowledge, it would be the duty of the court to dismiss the appeal of its own motion. If the decisions quoted by the appellant contain anything contrary to what we here declare to be the law, they must be considered to that extent overruled."

The Gagneaux case has been cited only twice by the Supreme Court, so far as we have found, namely: in the cases of Vallee vs. Hunsberry, 108 La. 136, 32 South. 359,

and State vs. Simpson, 122 La. 301, 47 South. 622.

The Simpson case is not at all in point, there having been an order of appeal in that case.

In the Vallee case, the court says:

"The transcript in this case was filed in this court November 8, 1901; and upon February 21st of the present year, the defendant and appellee moved to dismiss the appeal upon the grounds: (1) That the transcript failed to show any order of appeal from the only final judgment 'read and signed'; (2) that the district court had divested itself of jurisdiction by granting an appeal to this court; and, (3) that no notice of the appeal was served on the appellee, or his counsel.

"As to the first ground, the motion comes too late." Webb vs. Keller, 39 La. Ann. 55, 1 South. 423.

We cannot think that the court intended, in this terse manner, to overrule the Gagneaux case, in which such an exhaustive examination of the authorities was made. Justice Monroe, the organ of the court in the Vallee case, was a member of the court which decided the Gagneaux case and the report shows no dissent on his part.

The appeal is, therefore, dismissed.

———

ON APPLICATION FOR REHEARING

ODOM, J.   When this case came up for consideration in this court, it was discovered that the transcript did not show that an order of appeal was asked for and granted by the lower court. We held, correctly we think, that this court should dismiss the appeal for that reason, even though no formal motion to dismiss had been filed by the appellee.

Appellant has applied for a rehearing and asks that the case be reinstated on the calendar for the reason that as a matter of fact an order of appeal was granted and that the omission of the order from the transcript was an oversight on the part of the clerk of the district court; and it attaches to its application an extract from the minutes of the court showing the granting of an order of appeal and the clerk's certificate that the said extract from the minutes is correct.

Obviously an injustice would be done the appellant to thus dispose of its case if as a matter of fact an order of appeal was asked for and granted.

The omission of the order from the transcript seems not to have been noticed by either the appellant or the appellee but was discovered by us.

It is therefore now ordered that a rehearing be granted, that our order dismissing the appeal be set aside and the case reinstated on the calendar in order that the appellant may have the transcript completed according to law.

REYNOLDS, J.   Recused.

ROBERTS, Special J.   The plaintiff brings this suit to recover from the defendant railway company the sum of fifteen hundred dollars, alleged to be the value of a Bour-Davis automobile negligently run over and practically destroyed by one of defendant's freight trains at a public crossing on the main street of the town of Eros.

The defendant admits the destruction of the automobile, but denies that same was destroyed as the result of any negligence on its part, and in the alternative, alleges that if the court should find that it was guilty of any fault or negligence, then and in that event, it is contended that the destruction of the car was caused directly

by the carelessness of Frank Sullivan, driver of the automobile, and that the driver's contributory negligence constitutes a bar to plaintiff's recovery.

There was judgment below for plaintiff, and defendant has appealed to this court.

## STATEMENT OF FACTS

The accident by which plaintiff's automobile was destroyed happened at Eros in Jackson parish, on the twelfth day of August, 1921. This suit was filed on May 29, 1922, and tried on December 10, 1923. Due to some defect in bringing up the appeal, and to changes in the personnel of this court, the final determination of the case has been more than ordinarily delayed.

Eros is a sawmill town with a population of about twelve hundred inhabitants. Most of the business section of the town is on one street popularly called Main street but shown on the plat of the town as Second street. This street runs through the town from northeast to southwest, and defendant's truck crosses it almost at right angles in a thickly populated part of the town.

On the day of the accident, plaintiff's son had taken the car from where it was parked in the neighborhood of plaintiff's store, and had driven out into the country somewhere southwest of the town. At the time of his return, the defendant's train crew were switching, or picking up some box cars which had been placed on what is referred to as the house track, or switch track, in contradistinction to the main track. It appears that the crossing on which the accident occurred is about six car lengths from the station, and that there were four box cars on this track at the time of the accident. The house or switch track is south or southwest of the main track and runs parallel with the main track from the depot to the crossing; and is separated from the main line track by a distance of about thirty feet.

It appears that the train crew had backed on the house track for the purpose of picking up the four box cars which were strung along it from the depot to the crossing, and that in the operation of picking up these cars, had backed that one of them which was farthest from the depot onto the crossing so that, according to the witnesses, from one-half to two-thirds of the crossing was blocked by this box car. The crossing, it appears, was about thirty feet wide, from which it follows that from fifteen to twenty feet of the crossing was blocked by the box car when the plaintiff's son drove up to it from the southwest.

When plaintiff's son drove up to the crossing he found his passage blocked by the box car and stopped. By looking to the right he would have seen behind the car which obstructed his passage, three more box cars and attached to them the locomotive which was being used in the switching operations. By cutting off the engine of his automobile, he could have heard, if he did not hear, the ringing of the bell on the locomotive, which according to undisputed testimony was ringing at the time. For a distance of several hundred yards before reaching the crossing, the road on which Frank Sullivan, the driver of the car, approached the crossing was straight, and as we gather from the testimony afforded an unobstructed view of the crossing as well as of the space to the right of the crossing on which was located the box cars and engine which were doing the switching.

Plaintiff's son says that when he approached the crossing he stopped for at least three-quarters of a minute before at-

tempting to cross the track, and that then hearing no signal nor whistle blown, and not being able to see the engine, and seeing no brakeman nor foreman at the crossing he started across the track and just as he got about halfway across the track the box car struck his automobile.

The testimony taken as a whole shows that when young Sullivan turned to the left and started to detour around the box car, he was struck by it, just as the front wheels of his automobile went upon the track.

The crossing in question is in a populous part of the town and affords the only way of getting from the country southwest of Eros into and away from that portion of the town where plaintiff's store is located. Under these circumstances there is no doubt that defendant was negligent in failing to have someone at the crossing to assist in preventing accidents during switching operations such as were going on when the accident in question occurred.

The remaining point to be determined is as to whether plaintiff's son, who had the automobile in charge was himself free of fault or negligence in attempting to make a crossing of the track under the circumstances which we have described.

If plaintiff's son was free of fault, the plaintiff is entitled to recover. If, on the other hand, the driver of the car was guilty of some fault for which the accident would not have occurred, the plaintiff is not entitled to recover.

The two principles of law above stated are so well known and established in our jurisprudence that no citation of authority is necessary to sustain them.

When young Sullivan drove up near the track and found his passage blocked by a box car standing on the crossing, that fact itself constituted both a signal to him of danger and a warning to use whatever precautions might be necessary to insure a safe crossing of the track. He did stop. But did he look and listen for the purpose of ascertaining whether it would be dangerous for him to try to drive around the box car and cross the track? It is not necessary in this case to hold the driver of an automobile when approaching a railroad crossing should under all circumstances stop, look and listen before proceeding across the track. Certain it is, however, that these precautions should have been observed under the circumstances shown in this case. Either young Sullivan looked and saw nothing and listened and heard nothing, and then proceeded to try to cross the track, or looked and saw the box cars and listened and heard the bell ringing, but decided he could detour around the box car and cross the track before anything could happen to him, or else after stopping his automobile he failed and neglected to look up and down the track at the same time listening, in order to ascertain whether the danger actually existed which had been suggested to exist by the presence on the crossing in front of him of a box car, which is not shown to have been there when he drove across the track in the other direction a little while before.

Plaintiff's most favorable witness, Downs, testifies that if young Sullivan had looked, there was nothing to keep him from seeing the three box cars and locomotive which were strung out to his right behind the box car on the crossing. If he looked he saw the danger and negligently took the chance of trying to cross in spite of the danger. If he did not look, he was negligent in failing to investigate before trying to cross in the face of the warning to him which resulted from the presence right in front of his eyes of a box car

blocking from one-half to two-thirds of a crossing which under ordinary conditions was open.

The physical facts of this case utterly refute the idea that plaintiff's son who was driving the car complied with the "Stop, look and listen" rule any further than merely to stop when he found his passage blocked by the box car. If he did not look, as already stated, he was negligent, and if he did look and listen he disregarded what he is bound to have seen and heard, and that was such contributory negligence as to bar plaintiff's recovery.

Plaintiff's able counsel specifies negligence on the part of defendant in that there was no flagman at the crossing, no lookout on the rear end of the train, nor warning of any kind given of the approaching train or car. It is shown that there was no flagman at the crossing, nor lookout on the rear of the train, and that no whistle was blown. There is testimony, however, to the effect that the bell was ringing, and this is not directly disputed. It may be conceded, therefore, that the defendant was guilty of all the negligence complained of, and still, as we understand the law, plaintiff is not entitled to recover on account of his own contributory negligence.

The "Stop, look and listen" rule does not mean that these precautions should be exercised in a perfunctory and ineffective manner. The rule is well stated by the Orleans Court of Appeal in the following language:

"It is the duty of a person approaching a railroad track to stop before crossing, and after stopping, to look and listen, not in a perfunctory manner but in an effective way in order to accomplish the end intended by the rule." Jefferson Planting & Mfg. Co. vs. Morgan's Louisiana, Etc., R. Co., Teiss. Orleans App. Dig. 42.

See also the case of Young vs. Louisiana Western Railway Company, 153 La. 129, 95 South. 511, where the court says:

"The duty of stop, look and listen before crossing a railroad must be performed at a time and place where stopping, looking and listening will be effective.

"The contributory negligence of an automobile driver in attempting to cross a railroad without stopping, looking and listening bars recovery even though the trainmen were guilty of concurrent negligence."

The rule is not complied with when one merely stops, as the driver did in this case, or where if, as in this case, the driver looked and listened he disregarded what he saw and what he heard and recklessly took a chance by trying to cross.

In the very similar case of De Nux vs. Louisiana Railway & Navigation Company, decided by this court in June, 1922, the following language was used, which is equally applicable here:

"The decisive fact in the case is that the failure by the defendant company to do its duty, if it did fail, was not the proximate cause of the accident of which plaintiff was the victim. If he had not gone blindly upon the crossing without looking or listening, and when the exercise of either of these faculties would have warned him of the danger, the collision could not have occurred."

The plaintiff De Nux said that he looked and listened before attempting to drive across the track, but the physical facts of that case, as of this, utterly refute such a claim.

"The doctrine that contributory negligence precludes recovery has been consistently adhered to in this state." Harrison vs. Railway Company, 125 La. 795.

For reasons given, the judgment of the lower court is hereby avoided and reversed,

and it is now ordered and decreed that the plaintiff's demands be, and they are hereby dismissed at his costs in both courts.