## No. 13,120.

### INTERDICTION OF MARIE G. HAAF.

#### SYLLABUS.

1. *Acceptance of a portion of the property inherited.* An heir, anxious to equalize her portion of the inheritance, in accepting the succession, accepted only to the extent that she knew the *de cujus* intended her to accept.
2. *Renunciation of a portion.* She renounced the remainder of the succession in favor of her co-heir in conformity with the intention of the *de cujus.*
HELD: That the renunciation was not a donation. It had not the form and essentials to make it a donation.
3. *Good faith.* In renouncing, the heir complied, in good faith, with the wishes of the one from whom she inherited.
4. *Not a donation.* It is quite exceptional, on the part of an heir, to renounce an advantage in order to equalize shares, and the effect of the renunciation is not to be construed as an act of donation different from that intended by the one renouncing.
5. *Expenditures not unauthorizedly made.* The properties were sold in accordance with an order of court and it does not appear that they were sold, as charged by the defendants, to pay a judgment against the interdict for expenditures in excess of her revenues.
6. *Amount of indebtedness justified sale.* The claims against the interdict were sufficient in amount to justify the sale.
7. *The orders of the court justified the sale.* The title offered to the adjudicatee was good and valid and not one which can be subjected hereafter to any claim against the vendor by her heirs for having donated property in excess of the disposable *quantum.*

A PPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*Bernard McCloskey* and *Percy S. Benedict* for Curator, Plaintiff in Rule, Appellee.

*Rice & Montgomery* and *Charles F. Claiborne* for Paul Pace, Adjudicatee, Defendant in Rule, Appellant.

The opinion of the court was delivered by

BREAUX, J. Judgment was pronounced in the District Court against the defendant in rule, filed to compel him to show cause why he should not accept the title tendered to property adjudicated to him at a public auction. From the judgment the defendant appeals, and urges on appeal that the title of the interdict to the prop-

erty thus adjudicated to him is derived from a donation; that the properties were sold to pay a judgment against the interdict for expenditures in excess of her revenues, and that the claims against her are not sufficient in amount to justify the sale of all the property of the interdict.

The facts are that the late Charles Haaf, father of the interdict, died leaving a widow and two heirs, viz: The interdict, Marie G. Haaf, and Philippine Mathilde Zimmerman, a grand daughter. In an act of partition of property between the heirs of Charles Haaf and his widow, the latter acquired six lots numbered two to seven. Mrs. Chalin, *nee* Philippine Mathilde Zimmerman, acquired lot number one, and Marie Haaf lot number eight.

Some time after this partition had been made, Widow Charles Haaf donated lots two, three, and four to her grand-daughter, Mrs. Chalin. She, the widow, married Francis Schuller, after the death of her husband. She died in 1883. Schuller became the executor of her succession and provoked a partition. To the proceedings Louis F. Chalin, executor of Marie Haaf, interdicted, was a party.

A family meeting was held on behalf of the interdict in July, 1883. The members set out as part of their deliberations that the widow of Charles Haaf and deceased wife of Francis Schuller, in April, 1872, donated to her grand-daughter, Philippine M. Zimmerman, wife of Louis F. Chalin, three lots of ground (Nos. 2, 3 and 4) situated in the Fourth District of the City of New Orleans, and that Mrs. Schuller had expressed the desire and intention in the presence of her grand-daughter, Mrs. Chalin, of making a similar donation to Marie Haaf, her daughter, interdicted, but that she failed to carry out her intention, and that to equalize the shares of the heirs in the successsion of Mrs. Schuller, Mrs. Chalin, her grand-daughter, desired to carry out the intention of her grand-mother and to transfer and put the interdicted, Marie Haaf, in possession of the whole of the three lots of ground situated in the Fourth District of New Orleans, in square No. 160.

Upon this, the members of the family meeting advised that the transfer of the three lots of ground by Mrs. Chalin to the interdict be accepted. The proceedings were approved by an order of court. Afterwards, by act before Notary Commagere, Philippine Mathilde Zimmerman, wife of Louis Chalin, declared that, whereas his grand-mother, widow of Charles Haaf, and wife, by the second marriage, of

Francis Schuller, had donated to her three lots of ground (Nos. 2, 3 and 4) situated in the Fourth District of the City of New Orleans, and whereas at the time of the donation Mrs. Schuller had expressed the desire and intentions of making a similar donation to her cousin, Marie G. Haaf, but failed to carry out her intention, the appearer in the act, Mrs. Chalin, declared that in order to equalize the shares of the heirs at law in the succession of Mrs. Schuller, and also in order to conform herself to the recommendations of the family meeting before referred to, she transferred and assigned to Marie G. Haaf, the interdict, represented by her under-curator, accepting for her and acknowledging possession, the lots of ground designated by the numbers 5, 6 and 7.

The defendants in rule contend that this was a donation; that Mrs. Louis F. Chalin has children; that the donation may be reduced; and the title is, therefore, precarious and not such as the purchaser may be condemned to take. In other words, that it might be subject to the objections found in the case of Tessier vs. Roussel, 41st Ann., 474, to complete the validity of such an act as the act of sale proposed by plaintiff in rule.

The effect of the acceptance by Mrs. Louis F. Chalin, defendants urge, is not and could not be limited to a part of the succession; that a succession can not be accepted in part and renounced in part for the reason that an heir is bound to accept or renounce for the whole, citing Article 1024 of the Civil Code. The law upon this score leaves very little to interpretation. It is manifest that the heir can not divide his acceptance and accept only a part, yet we think that he may renounce a part of the succession to one of his co-heirs, particularly as in this case, in order to equalize the share of each. He is bound as having accepted the whole succession, but it does not follow that, as between him and his co-heirs, he may not renounce, and this without making an act of donation.

It is in evidence before us that the grandmother desired and intended to make a donation to Marie G. Haaf, her grand-daughter, interdicted.

Moved by this desire of the grandmother, the grand-daughter, Mrs. Chalin, while accepting the succession, renounced her right to the property she knew that her grandmother intended Marie G. Haaf should have. There was, as we take it, a natural obligation to comply with the expressed wish of the grandmother. It is true that the inten-

tion was not put down in writing, none the less, if the grand-daughter was positive that it was the wish of her grandparent to equalize the inheritance she left, there existed an obligation on her part to carry out the desire, and that obligation should not be termed less than natural.

"There is, also, a natural obligation on the part of those who inherit an estate, either under a will, or by legal inheritance, to execute the donations or other dispositions which the former owner had made."

Although the intention is conveyed in a form absolutely defective, there is a natural obligation which may become binding by executing the donation. Where an heir knows and is thoroughly convinced of the intention and expressed desire of the one from whom he inherits, the obligation *in foro conscientiae* is as binding as if it had not been written in a form entirely defective and of no possible effect as a legal obligation in its original form.

Our learned brother of the District Court rested his conclusion on another ground, as we shall see by the following:

"In 1884, when of full age and married, Mrs. Chalin renounced the advantage of said donation and, being duly authorized by her husband, transferred said lots to the interdict to equalize the heirship and carry out her grandmother's wish. Said act of transfer of 1884, therefore, seems to me, not an act of donation, but a mere renunciation of interest made in settlement of the grandmother's estate.

"How far the natural obligation to respect her grandmother's wishes may enter as a factor, may give food for reflection, but I do not follow up the suggestion. I place my decision on the ground that the act on its face, in its form, and for its express purpose, is not an act of donation, and on the further ground that an heir may renounce or collate an advantage, to the end, that an equitable partition may be effected, or may even renounce it *in toto*."

We have copied the foregoing from the opinion for the reason that it presents conclusive grounds, we think, to sustain his judgment.

The right to renounce a portion of a succession in order to bring about an equitable division among co-heirs is governed by different rules from those relating to the right to make a donation.

Among heirs, the renunciation is subjected to no special form; it may be made and accepted in all sorts of acts authentic or *sous seing prive*. We do not think that we should construe the act of renunciation into a donation and thereby bring it within the effect of the law

regarding the disposable portion. This renunciation is not a gratuit-
ous transfer made without consideration and merely for liberality's
sake.

The second ground urged by appellant to set aside the judgment is
that the properties were sold to pay a judgment against the interdict
for expenditures in excess of her revenues and based on speculations
with her funds.

The facts upon this point are as follows:

The inventory of the property of the interdict consists of property
valued at three hundred dollars.

Louis Chalin was appointed curator of the interdict on July 14th,
1882. On July 16th, 1882, Chalin filed a petition in court for the
settlement of the succession of Maria Ursula Schuller and asked that
a family meeting should be convened for the purpose of advising re-
garding the rights of the interdict and on what terms the property
should be sold and what investment should be made of the cash. The
family meeting was held and it recommended that it was in the
interest of all to sell all the real estate described as forming part of
the *proces verbal* of the proceedings, for the reason that the proceeds
of the sale could be invested for her interest and that thereby it
would be protected, and they recommended the making of improve-
ments on the three lots transferred to her by Mrs. Chalin, as before
stated. The properties were sold at public auction in accordance with
the recommendation made to the court. The curator received
$3,132.41 for the interdict. He received her share in the movables,
$3,301.25. This makes a total of $6,433.66.

The curator made improvements on the properties; after paying for
them and meeting other alleged disbursements for the minor, there
remained a balance due by the interdict of two thousand one hundred
and fifty-two dollars ($2,152). The curator represented to the court
that it was to the interest of the interdict that the amount be secured
by mortgage which would in course of time be met by rents and
revenues.

The family meeting advised the making of a mortgage as asked for,
and it was done. These proceedings were instituted in 1885.

In the course of time an amount was paid on this indebtedness, but
there still remained due the sum of two thousand one hundred and
fifty-two dollars and interest. This amount was approved by a judg-
ment of the court rendered contradictorily with the under-curator.

The curator, Chalin, having withdrawn from his trust, another curator, Williams, was appointed, and, under the letters of administration, as curator, a family meeting was convened and property of the interdict was sold to pay her indebtedness. The sale took place under the order of court. This is the sale at which the defendant in rule became the adjudicatee of part of the property sold. The proceedings are in regular form and were conducted before a court of competent jurisdiction. Family meetings were called and they advised regarding the sales, and every step taken received the sanction of the court. If there were any irregularities or illegalities committed in the course of these proceedings, they are not evident. In any case they are not such as can affect the interest of a third person, adjudicatee of the property. The different orders and judgments timely rendered are enough to protect the title. Succession of Hawkins, 35th Ann., 591.

Appellant assumes that the parties here are parties to asserted illegal proceedings and that, in consequence, the rule, laid down in repeated decisions when third parties, as adjudicatees of property, are concerned, is without force or effect. But even from that standpoint it would not be possible where fraud or wrong of some sort does not appear, to hold collaterally that all the proceedings are null and void.

The curator, however, is not a party against whom these proceedings are conducted. The adjudicatee has naught to do with his responsibility to the interdict. He, Chalin, curator, may not be protected by the different proceedings of the court, but the adjudicatee, and appellant here, certainly is protected.

The third ground of defence is, that the claims against the interdict are not sufficient in amount to justify the sale of all the property of the interdict. The total amount of the debts is about $4,600. The whole property sold for $6,100, more by one hundred dollars ($100) than the amount at which it had been appraised. The difference between the price of the sale and the value of the property is not sufficiently great to justify us in setting aside the sale. The family meeting had advised the sale of the whole property. The result shows that it was not extravagant or unreasonable, and not in the least prejudicial to the interest of the interdict.

We, therefore, conclude that it is to the interest of the interdict to affirm the judgment.

It is ordered, adjudged and decreed that the judgment be affirmed.