(53 South. 63.)

No. 18,169.

CURTIS v. UNION HOMESTEAD ASS'N.

(June 20, 1910.)

*(Syllabus by the Court.)*

1. VENDOR AND PURCHASER (§ 129*)—SUFFICIENCY OF TITLE.

Where A. dies, leaving a will, whereby, referring to no previous marriage, he disposes of practically his entire estate in favor of his wife, who survives him, and their minor children, and the will is admitted to probate and ordered to be executed, at the instance of the widow, acting as guardian of the children (by the testamentary appointment and under the law of their domicile), who, with others, makes affidavit that the deceased had contracted no previous marriage; and the minors are recognized, by the judgment of a court of competent jurisdiction, to be the sole heirs of the decedent, with respect to certain immovable property in Louisiana, which was acquired prior to the marriage of their parents, and as such are put in possession thereof; and said property is then sold by the advice of a family meeting, and under a judgment of the same court, and is, thereafter, sold by the adjudicatee to another party, who, in turn, sells it to still another—an objection by the last purchaser that the title tendered is not good, because there is no proof that A. was not married at the date of his acquisition of the property, is untenable. There is no presumption that A. was married to any other wife than the one who survives him, and, in the absence of any suggestion to that effect, the affidavits of the surviving wife and others, with the corroborating circumstances stated, afforded sufficient basis for the judgment rendered. The question of the sufficiency of the evidence was, however, a matter for the decision of the judge of the first instance, who was required to act, and the responsibility of determining whether he could legally recognize the minors to be the owners of the property, and could, legally, order the property to be sold, rested upon him, and not upon the innocent layman, who, acting upon the faith of the judgment ordering the sale, parted with his money and became the purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 238, 241; Dec. Dig. § 129.*]

2. MINORS — APPOINTMENT OF GUARDIAN — FOREIGN APPOINTMENT—EVIDENCE.

A properly exemplified record from the probate division of the High Court of Justice in England, showing the probate of a will whereby the testator appoints his wife guardian of their minor children, with affidavits of English solicitors to the effect that, under the law of England, no other appointment or confirmation as guardian is required, in the absence of evidence to the contrary, sufficiently proves such appointment and the capacity of the appointee to act.

[Ed. Note.—For other cases, see Guardian and Ward, Dec. Dig. § 166.*]

3. MINORS — APPOINTMENT OF GUARDIAN WITHOUT THE STATE — AUTHORITY — CONSTRUCTION OF STATUTE—TUTORSHIP.

Prior to the passage of Act No. 145 of 1843, it was settled jurisprudence in this state that the appointment of a guardian at the domicile of the minor, whether in another state of the Union or a foreign country, would be recognized in this state, and section 1, of the act of 1843, was interpreted as operating no change in that respect. In 1870 the section mentioned was incorporated in the Civil Code, as article 363, and, as no change was made in its lan-

guage, it is to be presumed that it was intended to bear the interpretation which had thus been placed on it, and, that the guardian of a minor domiciled in a foreign country, where the laws are similar to our own, should continue to be recognized here, on proof of appointment under the law of the domicile and without further confirmation or qualification.

[Ed. Note.—For other cases, see Guardian and Ward, Dec. Dig. § 166.*]

4. MINORS—SALE BY GUARDIAN—VALIDITY——TITLE OF PURCHASER.

Where a foreign guardian presents a petition to a probate court of this state showing that his ward owns but two pieces of real estate, which he describes, and which, after due appraisement and on the advice of a family meeting, are sold, by order of court, the objection, made nearly 10 years later, by a third vendee that the title is not good, because no inventory was made, is untenable; and equally untenable are the objections that no inventory was recorded and that the undertutor, who was appointed, was called "under tutor ad hoc." If those were irregularities (which need not be conceded), nevertheless, quoad the adjudicatee, who purchased on the faith of a judgment rendered by a court having complete jurisdiction, and those who acquired through him, they were cured by the sale, the rule, in such cases, being, that the adjudicatee is not bound to look beyond the judgment ordering the sale and the authority of the court by which it was rendered.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 568, 569; Dec. Dig. § 169.*]

5. ATTORNEY AND CLIENT (§ 88*)—AUTHORITY OF ATTORNEY OF RECORD—APPEARANCE BY INTERVENER—SUFFICIENCY.

Where, in an action to compel a purchaser to accept title from a widow who acquired the property during the life of her husband, between whom and herself there existed a community of acquêts, the sole heir of the deceased husband intervenes, through counsel, and, disclaiming all interest, declares that the property was acquired by his mother with paraphernal funds, the objection that such appearance is insufficient to bind the intervener, and that he should be required to join his mother in the act of sale, is untenable. The authority of an attorney of record cannot be impugned upon a mere suggestion, and, accepting the intervener's disclaimer as binding on him, there is no reason why he should join in the sale of property in which he has no interest.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 161, 163; Dec. Dig. § 88.*]

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Mrs. Annie A. Curtis against the Union Homestead Association, in which a

certain third person intervened. From the judgment, defendant appeals. Affirmed.

Carroll, Henderson & Carroll, for appellant. Clegg, Quintero & Gidiere, for intervener. Cage, Baldwin & Crabites and Jessy Benedict Gessner, for appellee.

### Statement of the Case.

MONROE, J. Defendant having agreed to buy from plaintiff a certain piece of real estate, situated on the corner of Carondelet and Perdido streets in New Orleans, declines to accept the title tendered, on the ground that it is not good; the admitted facts of the case being substantially as follows:

(1) Washington Jackson, Sr., and Washington Jackson, Jr., acquired the property, by notarial act duly recorded, March 21, 1850.

(2) Washington Jackson, Jr., purchased the interest of Washington Jackson, Sr., by notarial act duly recorded, June 13, 1856, thereby becoming the sole owner.

(3) There is nothing in either of the acts mentioned to show the marital status of Washington Jackson, Jr. (hereafter called Washington Jackson).

(4) Washington Jackson was a British subject, who lived in England, and died there in 1895; and his succession was opened here in the civil district court.

(5) Under a judgment rendered in said succession proceeding, the property in question was adjudicated, at public auction, to the Louisiana Land Co., Limited, and a notarial act of sale, pursuant to the adjudication, was passed June 17, 1900, and duly recorded.

(6) The Louisiana Land Co., Limited, sold the property to plaintiff, Mrs. Anne A. Aiken, then the wife, now the widow, of William P. Curtis, by notarial act, March 19, 1903, duly recorded.

(7) William P. Curtis died, leaving, as his sole heir, Edward Earle Curtis, who lives in Kentucky.

(8) Bertram Washington Jackson and Ray-

mond Roper Jackson are children of Washington Jackson, deceased, and are minors.

Beyond the facts thus admitted, it otherwise appears that Edward Earle Curtis, intervening herein as the sole child and heir of his father, William P. Curtis, deceased, declares that the property in question was purchased by his mother, the plaintiff herein, with paraphernal funds, received by her from the succession of her father, and is her separate paraphernal property, and he asks that there be judgment to that effect and as prayed for by plaintiff.

It further appears that Washington Jackson left a will and codicils, in which he named his wife and Frederick E. A. Wollaston as his executors, and his wife as guardian of the two minor children, issue of their marriage, and whereby he devised his residuary estate, including the property here in question, to his said named executors, as trustees for the use and benefit of the minors, authorizing them to dispose of the same and reinvest the proceeds as they may deem advisable; that Wollaston renounced the probate and execution of said will and codicils, but that the same were proved and registered in the principal probate registry of the High Court of Justice in England, by which court administration of the personal estate of the deceased was granted to Constance Helen Jackson, the widow of the testator, she "having been first sworn well and faithfully to administer the same"; that on March 23, 1897, Mrs. Jackson, as widow and guardian, through Joseph S. Doane, duly authorized by power of attorney and represented by local counsel, presented a petition to the civil district court for the Parish of Orleans, upon which, on proper allegations, supported by an exemplified copy of the proceedings in the English court and by the affidavits of two English solicitors in active practice, to the effect that, when a testator "by his last will appoints his surviving wife as guardian of their minor children, such surviving wife needs no other appointment or confirmation to act as such guardian to her minor children," and by her own affidavit and the affidavits of two other persons, to the effect that her deceased husband had never been married prior to his marriage with her, she obtained a judgment decreeing that she be recognized as the guardian of her minor children (naming them); that Joseph S. Doane be recognized as her attorney in fact; and that the minors be recognized as the sole heirs of their father and put in possession of his estate, including the Carondelet street property here in question and another piece on Dryades street; that on March 25th following Mrs. Jackson, in her said capacities, presented another petition to the civil district court, agreeably to the prayer of which a family meeting was convened on behalf of the minors, an under tutor ad hoc and appraisers were appointed, the Dryades street property appraised, and, on the advice of the family meeting, duly homologated, ordered to be sold, and thereafter presumably sold; that on April 9, 1900, Mrs. Jackson, in her said capacity, through Norvin T. Harris, appearing as her attorney in fact and represented by local counsel, presented another petition to said civil district court, alleging that the Carondelet street property was the only asset belonging to the minors left within this jurisdiction; that she and they lived in England, and that she was therefore unable to give the property her attention, and that it would be to the best interest of the minors that it should be sold, upon which petition, and one which followed, she obtained orders for the convening of a family meeting, which advised the sale of the property, for the appointment of a tutor ad hoc, who approved that advice, for the appointment of appraisers, by whom the property was appraised, and a judgment homologating the proceedings of the family meeting, and ordering that the property be sold, as

thus recommended, at public auction, which judgment was duly executed by the adjudication and sale of the property to the Louisiana Land Company, by which, on March 19, 1903, it was sold to the plaintiff in this case.

## Opinion.

1. Defendant assigns as one of its reasons for rejecting the title tendered that there is no proof that Washington Jackson was not married in 1850 and 1856, when he acquired, first, part, and then the remaining, interest in the Carondelet street property. The proof submitted to the district court, which was required to act in the matter, consisted inter alia of the sworn statements of Mrs. Jackson and of two other persons to the effect that "he" (Washington Jackson) "had never been married before his marriage" with said Mrs. Jackson, which statements were corroborated by the facts; that no one alleged that there was any prior marriage or set up any claim, as derived therefrom; that the decedent, by will, disposed of his entire estate in favor of Constance Helen Jackson, his wife, and their two minor children, save some legacies to collateral relatives; and, that the will was ordered to be executed by the court of his domicile; which proof we think was sufficient to support the judgment rendered. The question of its sufficiency was, however, one for the district court to determine, and though we might, at this time, entertain a different view, or, though it might now be made to appear that, as a matter of fact, Washington Jackson was married in 1850 and 1856, and that he left heirs by his then wife, we do not see how the rights of the adjudicatee of the Carondelet street property, who purchased on the faith of a judgment rendered by a court of competent jurisdiction, could be affected by such development, since that court was authorized upon evidence satisfactory to it to decide whether the minors were entitled to be recognized as the owners of the property, and upon proper proceeding in their behalf to order that it be sold, and the responsibility of determining whether the evidence upon which the judgments upon those questions were rendered was sufficient and satisfactory rested upon the court, and not upon the innocent purchaser of the property or his successors in title.

2. Defendant objects to the title on the further grounds that the judgment of the civil district court recognizing Mrs. Jackson as the guardian of the minors was and is void because unauthorized by law; that she has never been legally appointed, confirmed, or recognized as guardian, or sworn as such; that she had no inventory of the property of the minors made or recorded; that she has never qualified nor received letters as tutrix; that, in the proceeding leading to the sale of the property, no undertutor was legally appointed; that the minors are not bound by said proceeding; and that their title has not been devested.

The appointment and qualification of the guardian under the law of the minors' domicile is shown by the exemplified copy of the will making the appointment, and of the proceedings wherein the will was admitted to probate, together with the affidavits to the effect that under that law no other appointment or confirmation is required to entitle the guardian to act in that capacity. The question which remains is whether the guardian, so appointed and qualified, was legally recognized and authorized to act in this state as she has done?

In the case of Berluchaux v. Berluchaux, 7 La. 545 (decided in 1835), our predecessors in this court said:

"It seems well settled, and the principle is not controverted by this court, that the tutor of a minor, deriving his authority from the law of their common domicile, has the right to exercise the actions of his pupil everywhere. The comity of nations recognizes the validity of such authority. * * * The first question, therefore,

is one of fact, has Amanda Berluchaux a tutor, recognized as such by the laws of Spain? If so, she may properly be represented by him in the action of partition now pending."

And, to the same effect, are the decisions in the cases of Chiapella v. Couprey, 8 La. 87, and Douglas v. Edwards, 9 La. 238. In 1843, the General Assembly enacted a law (No. 145 of 1843, p. 97), the first section of which (now article 363, Civ. Code) reads:

"Any person who has been, or shall be, appointed tutor or guardian of any minor, residing out of the state of Louisiana but within the United States, and who has qualified as such in conformity with the laws of the state, or country, where the appointment was made, shall be entitled to sue for, and recover, any property, rights, or credits, belonging to the minor, in this state, upon his producing satisfactory evidence of his appointment, as aforesaid, without being under the necessity of qualifying as tutor of the minor, according to the law of Louisiana."

This was merely affirming, as to the guardians of minors residing out of Louisiana, but within the United States, the doctrine which had already been established by jurisprudence; but, there is an ambiguity in the statute, in regard to its further application, which may be said to have left it open to interpretation. Thus, after referring to the "tutor or guardian of any minor residing out of the state of Louisiana, but within the United States," it reads:

"*And who has qualified as such in conformity with the laws of the state or country where the appointment was made*" (italics by the court).

And, if we assume that the act was intended to apply only to the tutor or guardian of any minor residing out of Louisiana, but within the United States, the further descriptio personæ, "and who has qualified as such in conformity with the laws of the * * * country where the appointment was made," is without meaning. It would therefore appear either that the words "but within the United States," or the words "or country," were incorporated in the act by inadvertence, and, in the interpretation of the apparently conflicting language, the act might

be given a meaning which would bring it into harmony with what had been held to be well-settled doctrine.

However that may be, in the matter of the succession of Lewis, 10 La. Ann. 790, 63 Am. Dec. 600, it became necessary to deal with the question of the effect of the act upon the rights and powers of a tutor appointed by a French court, and it was said:

"The appointment is in every respect legal. The objection that the court of France had no power to appoint a tutor to an American minor cannot be consistently maintained by courts that are, themselves, daily making appointments of a similar character. The applicant stands before the court, therefore, in the same light as would a tutor legally appointed to a minor born in France, with all the rights which any foreign tutor would have with reference to property in this state belonging to the ward. The petitioner in this case asks that he be 'recognized as tutor' and that, as such, he may be allowed to obtain such orders, decrees, judgments and proceedings as may be 'legal and equitable,' and 'to the court, may seem meet and proper.' We do not understand this application as claiming the right to act otherwise than under the orders of the court, and therefore, of course, in accordance with the laws of the state."

The court, then refers to the cases of Berluchaux v. Berluchaux and Chiapella v. Couprey, supra, as, also, to the matter of the Succession of Senac, 2 Rob. 258, as "furnishing a safe and consistent rule of action, founded on considerations of expediency and public policy," and proceeds as follows:

"The act of 1843, p. 97, it is true, is limited in its application to tutors or guardians residing within the limits of the United States; it has, moreover, reference to the removal of property from the state" (referring to the second section of the act); "but it is to be observed that the act appears to have been intended as an enlarging, not a restrictive, statute, and was, properly, passed for the purpose of quieting all doubts with reference to the question which had divided the opinions of jurists. Be this as it may, we see nothing in the previous, or subsequent, jurisprudence of the state which would prevent a foreign tutor from being recognized as entitled to stand in judgment in all conservatory or administrative measures which the interest of his ward might require. He may provoke, by and with the advice of a family meeting and under the sanction of the court, the investment of the funds of the minor, or the sale of his property and the reinvestment of the proceeds."

In Succession of Gorrisson, 15 La. Ann 31, though the question decided was that the judgment of the district court of one parish could not be attacked collaterally or in the district court of another parish, the court made the following quotation and citation of authorities in support of its judgment, to wit:

"It belongs to the domestic judge to nominate tutors and guardians for minors and idiots. The law of nations, which has an eye to the common advantage and good harmony of nations, requires, therefore, that such nomination of tutor or guardian be valid and acknowledged in all countries where the pupil may have concerns. Vattel's Law of Nations, p. 227, Book 2, c. 7, § 85; Story's Conflict of Laws, §§ 495–7. See, also, Statute of April 1, 1843."

In Vick v. Volz, 47 La. Ann. 42, 16 South. 568, it appeared that Volz was interdicted in Switzerland, where he resided, and that a tutor was appointed by the court of his domicile. It was held that he was properly represented, in a partition proceeding in this state, by the attorney in fact of the tutor so appointed; the rule applicable to minors being held to be that by which the matter was governed.

It will thus be seen that, prior to the passage of the act of 1843, it had been held that the appointment of a guardian in a foreign country would be recognized here, and that it was so held after the passage of that act. We know also that in 1870 the section of that act which relates to this matter was incorporated in the Revised Civil Code as article 363, and that no change was made in its provisions, and we are bound to take notice of the fact that it was thus re-enacted long after it had been interpreted as hereinbefore shown; from which it would be fair to conclude that it was the intention of the lawmakers that it should continue to bear that interpretation. We are therefore of opinion that Mrs. Jackson was legally appointed and qualified under the law of her, and their, domicile, guardian of her minor children; that she was legally recognized

as such by the civil district court for the parish of Orleans; and that no further appointment or qualification was required to entitle her to represent the interests of the minors in this state.

3. It is objected that no inventory of the property of the minors was made or recorded. But the sole assets in which the minors were interested appear to have consisted originally of two pieces of real estate which were described in the petitions for their sale, and which were appraised by experts appointed for that purpose, so that everything was done in the way of making an inventory that could have been accomplished by a notarial act. The recording of the inventory is required, in the case of a tutor appointed by one of our own courts, as a means of enforcing the liability of such tutor, but a foreign tutor or guardian does not qualify with reference to the laws of this state, and does not account to our courts, save in so far as he may be required to do so by or for the benefit of creditors holding claims against the estate which he administers or seeks to remove. When, therefore, as in this case, the matter concerns only the interests of minors domiciled in a foreign country, there is no more, but rather less, reason for requiring the foreign guardian to record an inventory than for requiring him to give bond or take an oath for the faithful discharge of his duties, since the bond, or the oath, if either could be legally exacted, might impose an enforceable obligation, whereas the recording of an inventory, to operate as a mortgage on the property of an officer of a foreign court, appearing here, through an attorney in fact, merely for the purpose of removing the property of his ward to their common domicile, would be an utterly vain thing.

4. It is also objected that no undertutor was "legally" appointed, by which is meant that the undertutor who, as a matter of fact, was appointed and qualified, and acted, for the purposes of the family meeting which

advised the sale of the property, was called an "undertutor ad hoc." He was so called, however, because his functions could not, in the nature of things, extend to the entire gestion of the tutor or guardian (since the latter lives with her wards in England, and holds her appointment under the authority of English law and an English court), but were confined to the approval, or disapproval, of the action of the family meeting, the advice of which, under the jurisprudence to which we have referred, is necessary to the sale of property belonging to a minor, whether resident or nonresident. If no family meeting had been required, no undertutor would have been needed, and, as it was, when the property of the minor had been converted into money, and had gone into the hands of the foreign guardian, who had removed it to the minors' foreign domicile, the functions of the undertutor were at an end. We can therefore see no impropriety or illegality in calling him an "undertutor ad hoc."

In conclusion, we may say that there is no suggestion or indication that the interests of the minors were in any way prejudiced, either because their property was described and appraised otherwise than in a formal inventory, or because such inventory was not recorded, or because the undertutor who was appointed to represent them was called an "undertutor ad hoc," but if the proceedings which led to the sale of the property could in those respects, be called irregular (which is not conceded), the irregularity quoad the adjudicatee of the property, who purchased on the faith of a judgment rendered by a court having complete jurisdiction, was cured by the sale; the rule in such cases being that the adjudicatee is not bound to look beyond the judgment ordering the sale and the authority of the court by which it has been rendered. Sizemore v. Wedge, 20 La. Ann. 124; Webb v. Keller, 39 La. Ann. 67, 1 South. 423; Succession of Keller, 39 La. Ann. 579, 2 South. 553; In re Haaf, 52 La. Ann. 249, 26 South. 834.

5. It is further objected that, even if Mrs. Curtis, plaintiff herein, acquired a valid title to the property, it was during the existence of the community between her husband and herself; that the property is therefore presumed to have belonged to the community; that Edward Earle Curtis, as the heir of his father, is presumed to have inherited a half interest in it; that his disclaimer of title, through his attorney, is insufficient; and that he ought, at least, to be required to sign the act of sale. The authority of an attorney of record is, however, presumed, and cannot be impugned upon a mere suggestion. Hennen's Dig. vol. 1, p. 150 et seq. And, accepting as binding the admission of the intervener that he has no interest in the property, we can find no sufficient reason for requiring him to join in the sale.

Judgment affirmed.